# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs October 1, 2025

## SAMUEL ADAM REESE v. LYNETTE ERIN REESE

**Appeal from the General Sessions Court for Roane County**
**No. 21CV1039      Dennis Humphrey, Judge**

_____

### No. E2024-01615-COA-R3-CV
_____

The parties sought a divorce from one another and specifically contested who should be their child's primary residential parent. After a three-day trial, the General Sessions Court for Roane County ("the Trial Court") entered a final decree of divorce and designated the mother as the child's primary residential parent. The father appealed. Finding that the Trial Court's judgment lacked sufficient findings of fact and consideration of the best interest factors codified in Tenn. Code Ann. § 36-6-106, we vacate the Trial Court's custody determination and remand this cause for the Trial Court to provide written findings of facts and conclusions of law, demonstrating its consideration of the best interest factors.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Vacated in Part and Remanded; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ANDY D. BENNETT and CARMA DENNIS MCGEE, JJ., joined.

Jennifer L. Chadwell, Oak Ridge, Tennessee, for the appellant, Samuel Adam Reese.

Judith R. Whitfield, Farragut, Tennessee, for the appellee, Lynette Erin Reese.

# OPINION

## Background

In June 2021, Samuel Adam Reese ("Father") filed a complaint for divorce against his wife, Lynnette Erin Reese ("Mother"), alleging the ground of irreconcilable differences. Mother filed a counter-complaint for divorce, alleging inappropriate marital conduct, and alternatively, irreconcilable differences. They share one daughter, Leliana, ("the Child"), born in 2016.

With her counter-complaint, Mother filed a proposed temporary parenting plan, proposing that the Child live with her during the school year in Ohio. Father subsequently filed an amended complaint, alleging that Mother moved to Ohio shortly before he filed for divorce. According to his amended complaint, Mother initially took the Child with her to Ohio. Father retrieved the Child, and she has lived with Father in Tennessee ever since. Father filed a proposed parenting plan naming him the primary residential parent.

During a three-day trial in March and May of 2022, Father and his former romantic partner, Regina Rollins, testified about their sexual relationship. Father testified that his sexual relationship with Ms. Rollins did not begin until after the parties' separation. In addition, testimony was provided by and about Melissa Boring, the Child's godmother and live-in caretaker, who had lived with Father and Mother since 2008 and continued to live with Father after the parties' separation.

In August 2022, the Trial Court entered a final decree of divorce, granting Mother a divorce based on Father's inappropriate marital conduct. In its judgment, the Trial Court incorporated its oral ruling regarding the care and custody of the Child and a permanent parenting plan. From the bench, as incorporated in its final judgment, the Trial Court named Mother primary residential parent, stating:

> The primary concern of this court is the stability of the parent that can provide the better home for the child, and I do resolve the credibility issue against Mr. Reese. He's lied under oath. As to cross-examination, he was evasive at times. He began to justify his answer before he gave it on occasion. He would answer with a question. And Regina, whose last name escapes me right now . . . Rollins also answered questions in that manner to some extent. And Ms. Boring was also the type of person that would justify her answer as she was giving it. The parties agreed to move one woman in that was a mutual friend, but then two others have lived in their home, two other women. And one of them, Mr. Reese has admitted to the divorce in his role -- I'm sorry, to the adultery, and he questioned whether or not it would be considered adultery. He's a pastor, a man of God, and he

even said, "Well, I don't know if they would look at it as adultery or not." But having sex outside of your marriage, having sex outside of wedlock is adultery. And so I don't know why he would be evasive on something like that. It's pretty cut and clear. And having Ms. Boring there, I think it's detrimental to the child to have a godmother who acts as the child's mother who sits in taking meals with her father every meal, who delivers her to and from school, who takes her alone on trips to other states. That has to be confusing for the child as to who her real mother is. And I don't find that he's tried to foster the relationship between mother and child. I find, in effect, that he is the dominant personality of this marriage and she's more of a submissive person who has let him make all these decisions and was finally put in the position of having to move out because he surprised her with a note, while in marriage counseling, that their marriage was over. The court is going to declare her as the parent with the primary responsibilities.

The permanent parenting plan entered by the Trial Court designated Mother as the primary residential parent, granting her 245 days of parenting time and Father 120 days of parenting time. Given that Mother lived in Ohio, the Trial Court's decision required the Child to relocate to Ohio to live with Mother most of the year.

The Trial Court "bifurcated the calculation of child support and transferred that determination to the Chancery Court in Anderson County." The Chancery Court for Anderson County resolved the child support issues in October 2024. Father timely filed a notice of appeal.[1]

## **Discussion**

Although not stated exactly as such, Father raises the following issues: (1) whether the Trial Court made sufficient findings of fact and conclusions of law pursuant to Tennessee Rule of Civil Procedure 52.01; (2) whether the Trial Court erred by designating Mother as primary residential parent; and (3) whether the Trial Court erred by prohibiting Melissa Boring, the Child's godmother and live-in caretaker, from staying overnight in Father's home during the Child's visits.

This Court has previously described the standard of review for child custody determinations as follows:

---

[1] Father initially filed an appeal before the Chancery Court for Anderson County resolved the issue of child support. This Court dismissed his appeal for lack of subject matter jurisdiction because there was no final, appealable judgment. *Reese v. Reese*, No. E2022-01116-COA-R3-CV, 2023 WL 6157248, at *1 (Tenn. Ct. App. Sept. 21, 2023).

"We review the judgment of a trial court in a bench trial de novo upon the record, according a presumption of correctness to the factual findings of the court below." We review the trial court's legal conclusions de novo with no presumption of correctness.

Additionally, our supreme court "has previously emphasized the *limited* scope of review to be employed by an appellate court in reviewing a trial court's factual determinations in matters involving child custody and parenting plan developments." In applying the de novo standard, "we are mindful that '[t]rial courts are vested with wide discretion in matters of child custody' and that 'the appellate courts will not interfere except upon a showing of erroneous exercise of that discretion.'" An abuse of discretion in child custody cases occurs when the trial court's decision "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." "The paramount concern in establishing a permanent parenting plan is the best interest of the children."

*Cooper v. Cooper*, 704 S.W.3d 784, 797-98 (Tenn. Ct. App. 2024) (internal citations omitted).

Father argues that the Trial Court erred by failing to provide sufficient findings of fact and conclusions of law pursuant to Tennessee Rule of Civil Procedure 52.01. Based on our review of the Trial Court's judgment, we agree.

Tennessee Rule of Civil Procedure 52.01 provides:

In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6).

Rule 52.01's requirement that trial courts provide findings of fact and conclusions of law apply to child custody determinations.

Moreover, custody determinations are governed by Tenn. Code Ann. § 36-6-106 (West July 1, 2016 to June 30, 2021), which provides:

(a) In a suit . . . requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child.  In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors.  The court shall consider all relevant factors, including the following, where applicable:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.  In determining the willingness of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, the court shall consider the likelihood of each parent and caregiver to honor and facilitate court ordered parenting arrangements and rights, and the court shall further consider any history of either parent or any caregiver denying parenting time to either parent in violation of a court order;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

With respect to the statute's requirement that trial courts consider all applicable factors in making child custody decisions, this Court has explained:

This Court has previously held that the General Assembly's decision to require findings of fact and conclusions of law is "not a mere technicality."

Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." In fact, findings of fact are particularly important in cases involving the custody and parenting schedule of children, as these determinations "often hinge on subtle factors, including the parents' demeanor and credibility during . . . proceedings." Indeed, appellate courts "are reluctant to second-guess a trial court's decisions" with regard to these matters and "will not interfere except upon a showing of erroneous exercise of that discretion." However, without findings of fact, "this [C]ourt is left to wonder on what basis the court reached its ultimate decision," and we are unable to afford appropriate deference to the trial court's decision.

*In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4 (Tenn. Ct. App. Nov. 8, 2012) (internal citations omitted).

Although a trial court need not "list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination," *Murray v. Murray*, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010), the statute requires that a trial court *consider* all the applicable factors and this Court has further encouraged trial courts to "'be as precise as possible in making child custody findings' in order to facilitate meaningful appellate review," *In re Connor S.L.*, 2012 WL 5462839, at *7 (quoting *In re Elaina M.*, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at *8 (Tenn. Ct. App. Oct. 25, 2011)). *See also Mangum v. Mangum*, No. E2018-00024-COA-R3-CV, 2019 WL 1787328, at *14 (Tenn. Ct. App. Apr. 24, 2019) (remanding for the trial court to make appropriate findings when the trial court considered only one factor, did not enumerate or discuss the other factors, and provided no discussion of the children's best interest).

In this case, the Trial Court did not provide sufficient findings of fact and did not demonstrate that it had considered all applicable factors pursuant to Tenn. Code Ann. § 36-6-106. The Trial Court's decision to make Mother the primary residential parent was based on (1) Father's lack of credibility, particularly with respect to his affair; (2) Ms. Boring's assistance to Father in taking care of the Child and the confusion that may cause; (3) Father's failure to foster a relationship between Mother and the Child; and (4) Father's "dominant personality." The Trial Court made no reference to section 36-6-106 or the best interest factors.

The only enumerated factor the Trial Court appears to have considered was factor (2), "the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents." The Trial Court found that Father had failed to foster a relationship

- 7 -

between Mother and the Child. However, the Trial Court did not consider or discuss any other relevant factors or even mention that it was considering its sparse findings in light of the Child's best interest.

The Trial Court made other findings of fact, focusing on Father's affair and his personality type, but did not explain how these findings affected the Child's best interest. In light of its sparse findings of fact, the Trial Court appeared to give outsized weight to Father's affair, which is relevant as to custody only to the extent it affects the Child's best interest. *See Cummings v. Cummings*, No. M2003-00086-COA-R3-CV, 2004 WL 2346000, at *8 n.5 (Tenn. Ct. App. Oct. 15, 2004) ("[T]he fault a parent bears for the breakup of the marriage is not relevant for the purposes of a custody determination, except insofar as that parent's conduct bears on his or her fitness for parental responsibilities."). In *Cummings*, this Court explained:

> As for any questions of character and its effects on parental fitness that arose from the mother's adultery, and her subsequent failure to testify truthfully about it, the trial court observed that "there is no direct evidence that her immoral behavior has adversely impacted the infant child." The evidence does not preponderate against that finding.

*Id.* In contrast to the trial court in *Cummings*, the Trial Court in this case made no finding as to whether Father's affair or his lack of candidness about the affair affected the Child's best interest.

The Trial Court, therefore, erred by failing to provide sufficient findings of fact and conclusions of law and focusing on Father's affair without specific findings about how that would impact the Child's best interest and Father's ability to parent the Child. Father appears to ask this Court to conduct a *de novo* review of the record and make our own determination as to which parent should be the Child's primary residential parent rather than remand the case for the Trial Court to provide written findings of fact and conclusions of law. Although "the appellate courts may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable,'" we decline to soldier on and conduct an independent review in this case. *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012) (internal citations omitted)

This Court has previously explained:

> Historically, appellate courts were presented with two avenues in responding to a trial court's failure to make adequate findings of fact and conclusions of law: (1) vacate and remand for the trial court to make the appropriate findings; or (2) conduct a review of the facts of the case without any deference to the trial court's ruling. The more modern remedy,

however, appears to be vacation of the trial court's ruling and remand for adequate findings, in light of the Tennessee Supreme Court's directive that this Court should not "relieve trial courts of the 'high judicial function' required of judicial decision-making by conducting 'archeological digs' of the record in an effort to support a trial court's decision."

*Grissom v. Grissom*, 586 S.W.3d 387, 396 (Tenn. Ct. App. 2019) (internal citations omitted). Although this Court has at times conducted a *de novo* review of the record when presented with insufficient findings by a trial court, *see Richardson v. Richardson*, No. M2020-00179-COA-R3-CV, 2021 WL 4240831, at *11 (Tenn. Ct. App. Sept. 17, 2021) ("[W]e will proceed to independently review the record to determine whether the trial court properly found that the children's best interests were served by naming Father primary residential parent."), this Court also has held that "the appropriate remedy is to 'vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law,'" *In re Connor S.L.*, 2012 WL 5462839, at *7. "[T]his is a determination more appropriately made by the trial court." *Mangum*, 2019 WL 1787328, at *14.

Rather than make our own independent review of the record as requested by Father, we remand this case for the Trial Court to make specific and appropriate findings of fact and conclusions of law, demonstrating a consideration of the Child's best interest and the statutory factors outlined in Tenn. Code Ann. § 36-6-106. In doing so, we emphasize that the Trial Court decidedly found Father not credible. Given that the Trial Court witnessed the parties at trial and that Father's lack of credibility impacted the Trial Court's ultimate decision, the Trial Court should be given an opportunity to explain its reasoning and provide findings that support its conclusion. The Trial Court, rather than this Court, is better suited to make that determination as this Court does not have the benefit of having witnessed the trial testimony.

The final issue raised by Father is whether the Trial Court erred by prohibiting Ms. Boring from overnight stays in his home during the Child's visits, unless Father and Ms. Boring are married. Father argues that this was inappropriate given that Mother did not request this prohibition and because no evidence demonstrated that Ms. Boring would jeopardize the Child in any way.

In her appellate brief, Mother argues that this issue is moot given that Father and Ms. Boring allegedly married after trial in December 2022. We agree that if Father and Ms. Boring did in fact get married, then this issue would be moot given the Trial Court's caveat that the prohibition did not apply if the two became married. However, Mother does not cite to or present any evidence of this marriage. Father makes no mention of the alleged marriage in his appellate brief. We have no way of verifying Mother's claim.

In any event, we conclude that the Trial Court's findings to justify this prohibition are insufficient. The Tennessee Supreme Court has stated: "As a general proposition, we agree that in an appropriate case a trial court may impose restrictions on a child's overnight visitation in the presence of non-spouses." *Eldridge v. Eldridge*, 42 S.W.3d 82, 89 (Tenn. 2001). As with custody determinations, "[v]isitation decisions should be guided by the best interests of the child." *Hogue v. Hogue*, 147 S.W.3d 245, 253 (Tenn. Ct. App. 2004). In *Bates v. Bates*, this Court reversed a trial court that prohibited the father's paramour from being in the presence of the child during visitation. No. 03A01-9412-CH-00426, 1995 WL 134907, at *3 (Tenn. Ct. App. Mar. 30, 1995). This Court held that in the absence of proof that the father's paramour was "harmful to the child, physically, emotionally, or otherwise," the restriction was "not justified by the best interest of the child standard applicable to custody/visitation decisions." *Id.*

The Trial Court did not provide sufficient findings of fact to justify its restriction on Ms. Boring's overnight presence during the Child's visitation. Other than its concern that Ms. Boring would form a maternal bond with the Child, the Trial Court failed to sufficiently explain how Ms. Boring's overnight presence in Father's home during the Child's visits would jeopardize or harm the Child. On remand, we therefore instruct the Trial Court to also (1) determine whether Father and Ms. Boring married, and if so, conclude that this issue is moot and (2) if they are not married, to provide sufficient findings to explain how Ms. Boring's overnight presence would be harmful to the Child.

### Conclusion

For the foregoing reasons, we vacate the Trial Court's primary residential parent determination and remand this cause for the Trial Court to provide sufficient findings of fact and conclusions of law, demonstrating that it has considered the best interest factors pursuant to Tenn. Code Ann. § 36-6-106. The Trial Court's custody schedule remains in effect pending the Trial Court's consideration of the best interest factors on remand. On remand, we also instruct the Trial Court to make sufficient findings regarding the relationship between Samuel Adam Reese and Melissa Boring and to what extent, if any, her overnight presence during the Child's visitation would be harmful to the Child. We also remand this cause to the Trial Court for collection of costs below. Costs of this appeal are assessed against the appellee, Lynnette Erin Reese.

_____
D. MICHAEL SWINEY, CHIEF JUDGE